[Civ. No. 52096. First Dist., Div. Five. Mar. 22, 1983.]

CHRIS D. YOUNG, Plaintiff and Respondent, v.
BANK OF AMERICA, Defendant and Appellant.

**COUNSEL**

Theodore Sachsman, Robert A. Padway, June E. Moroney and George M. Duff for Defendant and Appellant.

Andrew H. Swartz and Spiering, Scherzer & Swartz for Plaintiff and Respondent.

**OPINION**

**LOW, P. J.**—Defendant Bank of America (Bank) appeals from a judgment awarding plaintiff Young $150,000 in compensatory and treble damages based upon a finding that the Bank violated provisions of the Song-Beverly Credit Card Act of 1971. Plaintiff reported to the Bank that her credit card had been stolen, but the Bank tenaciously sought collection of charges she did not make. In awarding damages, the jury considered her claim for emotional distress. We affirm.

Under the Credit Card Act (Civ. Code, § 1747 et seq.) a credit card issuer is required to correct billing errors within 60 days of notification by the card-holder. The Credit Card Act also prohibits the card issuer from communicating unfavorable credit information to a third party while a billing dispute is under investigation. A cardholder who is injured as a result of the wilful violations of either of these provisions may collect damages, which can be trebled in the court's discretion. (Civ. Code, §§ 1747.50, 1747.70.)

In her complaint for declaratory relief and damages, plaintiff alleged that she notified the Bank that her credit card had been stolen; that the charges thereafter incurred were unauthorized; that despite being so informed the Bank refused to remove these charges from her account; and that the Bank knowingly communicated this erroneous credit information to a credit reporting service, all in violation of Civil Code sections 1747.50 and 1747.70.

Following a bifurcated trial on the issues of liability and damages, the trial court found and concluded that Young was not liable for the charges to her account, and limited her liability to the Bank in the amount of $50 pursuant to former Civil Code section 1747.20. That section limited the cardholder's liability for the unauthorized use of a credit card to $50, on condition that the cardholder inform the card issuer that the card was lost or stolen within a reasonable time after the event. A jury tried the issue of damages and returned a general verdict in favor of respondent for $50,000. The trial court concluded that the Bank's conduct was wilful and callous and trebled the damage award as permitted under Civil Code sections 1747.50, subdivision (c) and 1747.70, subdivision (d).

The facts, as stated in an agreed statement submitted to the trial court are as follows: On May 24, 1979, plaintiff permitted her friend Jerry Wooden to use her BankAmericard Visa credit card issued by the Bank for the sole purpose of purchasing a one-way airplane ticket to Hawaii, in the approximate sum of $150, on condition that Wooden telephone plaintiff everyday from Hawaii and return the credit card to her when he returned to California. Wooden disappeared after May 24th; he never telephoned Young and did not return her credit

card to her. On May 26, 1979, Young telephoned the Bank and informed them that her credit card had been stolen and to cancel it effective immediately. On September 3, 1979, the Bank recovered the credit card, but not before Wooden or some other person incurred $2,198.32 in charges. The Bank refused to adjust Young's balance and billed her for the charges.

The evidence at the damages phase of trial established that on June 13, 1979, Young visited the Monterey branch of the Bank and confirmed her earlier telephone call. She later wrote a letter to the Bank repeating her earlier report that her credit card was stolen. During the investigation of the disputed charges, the Bank informed TRW credit reporting service that Young had exceeded her credit limit and that her account was 30 days past due. The Bank did not notify TRW that a dispute existed. Neither did the Bank advise Young of the unfavorable credit report. For several weeks following the reported loss, Bank employees made numerous telephone calls to Young's parents' home and her place of work regarding the outstanding balance on her account and continued to send her statements demanding payment of the disputed amount.

In January 1980, Young applied for and was refused a credit card from the Monterey branch of the Valley National Bank. The decision to reject the application was based on the unfavorable TRW credit report. Young's credit report reflected a "negative" credit profile indicating that her account was 120 days delinquent with a balance due of $2,198. Young testified that she suffered emotional stress.

■ In support of its first contention, the Bank argues that since Wooden had apparent authority to use the credit card, the credit card could not be considered lost or stolen within the meaning of Civil Code section 1747.20. We disagree.

The former statute provided: "If an accepted credit card is lost or stolen after the credit card has reached the cardholder, and the cardholder notifies the card issuer within a reasonable time by telephone, telegraph, letter, or any other reasonable means after discovery of loss or theft or after the time in which a reasonable man in the exercise of ordinary care would have discovered the loss or theft, the cardholder is not liable for any unauthorized use of the credit card. In no event shall the liability of a cardholder for the unauthorized use of a credit card exceed fifty dollars ($50)." (Repealed by Stats. 1982, ch. 545, § 6; and replaced by § 1747.10, Stats. 1982, ch. 545, § 5 [limits liability for unauthorized use to $50].)

"Unauthorized use" as defined in former Civil Code section 1747.02, subdivision (f) means: "[T]he use of a credit card by a person, other than a cardholder, (i) who does not have actual, implied, or apparent authority for such use and (ii) from which the cardholder receives no benefit. 'Unauthorized

use' does not include the use of a credit card by a person who has been given authority by the cardholder to use the credit card. Any attempted termination by the cardholder of such person's authority is ineffective as against the card issuer until such time as the cardholder complies with such procedures as may be required by the card issuer to terminate such authority. [Furthermore,] following the card issuer's receipt of oral or written notice from a cardholder indicating that it wishes to terminate the authority of a previously authorized user of a credit card, the card issuer shall follow its usual procedures for precluding any further use of a credit card by an unauthorized person." (Amended by Stats. 1982, ch. 545, § 2.)

The facts support the trial court's finding that the credit card was stolen and Wooden's use of it was unauthorized. After receiving the credit card, Wooden failed to perform as promised; i.e., to telephone daily, to limit the use of the card to one plane ticket and to return the card shortly. It may be reasonably concluded that he took it under false pretenses, never intending to return it to Young. (See *People* v. *Fujita* (1974) 43 Cal.App.3d 454, 467-468 [117 Cal.Rptr. 757].) Wooden retained possession of the credit card beyond any permission given, with intent to deprive Young permanently of the benefits of ownership. Therefore, the credit card was stolen within the meaning of the statute.

It is not significant that Young had voluntarily loaned the credit card to Wooden in the first instance or that the name on the card could denote that the cardholder was male or female. On May 26, 1979, two days after Wooden disappeared, Young informed the Bank that the card was stolen and that any subsequent use was unauthorized. Young had fulfilled her duties under the statute and the trial court properly limited her liability to $50.

The Bank next urges that the trial court erred by permitting Young to amend her complaint to include a prayer for damages from emotional distress. Before we reach this issue we must decide whether damages for pain and suffering and emotional distress are recoverable at all. The statute provides that a cardholder may bring an action for recovery of damages in the event of a wilful violation of the statute. (Civ. Code, §§ 1747.50, subd. (c), 1747.70, subd. (d).) The Bank argues that its conduct amounted to a breach of contract for which emotional distress damages are not recoverable. We disagree.

This is an action sounding in tort rather than in contract because it seeks damages for a violation of a duty imposed by statute. Applying the general rule for fixing tort damages, all harm proximately caused by the defendant's breach of a legal duty is compensable, including damages for emotional distress. (Civ. Code, § 3333; see *Neal* v. *Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 920, fn. 3, 922 [148 Cal.Rptr. 389, 582 P.2d 980]; *Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425, 432 [58 Cal.Rptr. 13, 426 P.2d 173].)

A like result was reached in *Royal Globe Ins. Co.* v. *Superior Court* (1979) 23 Cal.3d 880 [153 Cal.Rptr. 842, 592 P.2d 329], which held that a private litigant may bring an action for economic and emotional distress damages against an insurer that violates certain unfair claims practices set forth in the unfair practices act. (Ins. Code, § 790 et seq.; *Royal Globe Ins. Co., supra,* at p. 886.) The Credit Card Act similarly imposes fair business practices for the protection of the consumers. "Such a law is remedial in nature and in the public interest [and] is to be liberally construed to the end of fostering its objectives." (*Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 434 [296 P.2d 801, 57 A.L.R.2d 914].) ■ We believe that wilful violations of the statutory standards entitle a cardholder to compensation for all damages resulting therefrom, including damages for mental and emotional distress.

■ The trial court acted within its discretion in permitting plaintiff to amend her complaint to contain a prayer for damages for pain, suffering and emotional distress. (See Code Civ. Proc., § 473.) On the day before the damages phase of the trial, the trial court granted plaintiff's motion to amend her prayer for damages to include "general damages, for pain, suffering, anxiety, grief and other elements of general damages . . . ."

The damages plaintiff sought are general damages which need not be specifically pleaded in any event. The prayer for damages in the original complaint was sufficient to put the Bank on notice that plaintiff would be seeking recovery for pain and mental suffering. Moreover, the amended prayer did not state a new cause of action as defendant claims and the Bank was neither prejudiced nor should it have been surprised. Under these circumstances there was no abuse of discretion. (See *Rainer* v. *Community Memorial Hosp.* (1971) 18 Cal.App.3d 240, 254-255 [95 Cal.Rptr. 901].)

Defendant urges that the evidence presented at trial was insufficient to establish the type of "extreme and outrageous conduct" which would justify an instruction on emotional distress damages.

■ In order to recover damages for emotional distress, the injury suffered must be severe, i.e., substantial or enduring as distinguished from trivial or transitory. (*Fletcher* v. *Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376, 379 [89 Cal.Rptr. 78, 47 A.L.R.3d 286].) Such injury may include " 'all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry and nausea.' [Citation.]" (*Golden* v. *Dungan* (1971) 20 Cal.App.3d 295, 311 [97 Cal.Rptr. 577]; *Fletcher, supra,* at p. 397.)

Young testified that as a result of her negative credit rating and the rejection by Valley National Bank of her credit card application, she experienced difficulty cashing personal checks at retail establishments. She was embarrassed and ashamed and would no longer shop at stores where she did not know the employees. She experienced feelings of helplessness and frustration because the Bank refused to adjust her account and repeatedly demanded payment. She complained of severe stress, nervousness, headaches, and insomnia. Because of this preoccupation with the disputed charges, her job performance suffered for which she was reprimanded. Out of desperation she also contemplated filing for bankruptcy. Other witnesses confirmed her suffering from stress and mental anguish.

There is ample evidence to support the trial court's finding that the emotional distress experienced by plaintiff was substantial and of the requisite severity to warrant an instruction to the jury. (See *Golden* v. *Dungan, supra,* 20 Cal.App.3d at p. 311; *Fletcher* v. *Western National Life Ins. Co., supra,* 10 Cal.App.3d at p. 397.)

█ The Bank argues that the verdict was excessive and that the trial court erred in refusing the Bank's request for a new trial on that basis. The jury awarded plaintiff $50,000 in general damages. The harm suffered by plaintiff, which included humiliation, anxiety and grief, is not easily quantifiable and is best left to the sound discretion of the jury. (See *Agarwal* v. *Johnson* (1979) 25 Cal.3d 932, 953 [160 Cal.Rptr. 141, 603 P.2d 58]; *Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 64 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878].) Given the severe mental and emotional pain suffered by Young over several months, and the Bank's computer-hearted insensitivity towards its customer, the award was not excessive.

█ Lastly, the Bank contends that the trial court abused its discretion when it trebled the damages awarded. The decision to award treble damages is for the sound discretion of the trial judge which should not be overturned except upon a showing of a clear abuse of discretion. (See generally *Roche* v. *Casissa* (1957) 154 Cal.App.2d 785, 788 [316 P.2d 776].)

The Bank persistently refused to adjust or correct Young's credit card statement within the statutory time limit and continued to demand payment despite being repeatedly informed that she cancelled her credit card and legitimately disputed the charges. Stubbornly, the Bank declined to even acknowledge that a dispute existed. Even after the trial court found that the charges were unauthorized, the Bank did not, as required by statute and its own guidelines printed on the reverse side of the statement, report the error to TRW. Without first attempting to resolve the dispute with Young, the Bank reported negative credit information to TRW, certainly aware of the adverse consequences.

This conduct was a wilful violation of the statute, and constituted a callous indifference to plaintiff's credit rating and to the financial difficulties she would likely suffer. An award of treble damages in light of such conduct was well within the discretion of the trial court.

The judgment is affirmed.

King, J., and Haning, J., concurred.

A petition for a rehearing was denied April 15, 1983, and the opinion was modified to read as printed above.