[No. D019557. Fourth Dist., Div. One. Mar. 27, 1996.]

CATHY BISHOP, Plaintiff and Respondent, v.
HYUNDAI MOTOR AMERICA, Defendant and Appellant.

**COUNSEL**

Martin, Wilson, Fingal & MacDowell, Thomas L. Wilson, Greines, Martin, Stein & Richland, Kent L. Richland, Alison M. Turner and Shelley Levine for Defendant and Appellant.

Preuss, Walker & Shanagher, Sheila I. Doyle and Alan J. Lazarus as Amici Curiae on behalf of Defendant and Appellant.

Rosner, Law & McGee and William R. McGee for Plaintiff and Respondent.

**OPINION**

**WORK, Acting P. J.**—Hyundai Motor America (Hyundai) appeals a judgment awarding Cathy Bishop "Lemon Law" penalties under the Song-Beverly Consumer Warranty Act (the Act), and damages for emotional distress, "loss of use" of her vehicle and certain incidental monetary damages. We conclude Bishop was not entitled to emotional distress damages or damages for "loss of use" of her vehicle during a period in which she incurred no expense or other monetary loss. We reject Hyundai's contention the court's error in permitting the jury to consider evidence of Bishop's emotional distress prejudicially permeated the jurors' verdict on other issues and conclude its claim of prejudice from any error in the court's instructing the jury on the element of willfulness as applied to the Act, was waived by Hyundai's failure to object to the arguably ambiguous instruction. Accordingly, we modify the judgment by striking the awards for "loss of use" and emotional distress. As modified, we affirm the judgment.

I

When she was 17 years old, Bishop's parents signed a purchase contract for a new Hyundai automobile on which she made all ensuing payments. She

was the primary driver of the vehicle and while it was still under warranty a manufacturing defect resulted in a fire damaging it beyond reasonable repair. Although Hyundai was promptly notified and soon acknowledged responsibility for the fire, offers of replacement vehicles were rejected because they were not equivalent to the one destroyed, and monetary offers were rejected as being below its actual value. After Hyundai stated its final offer would expire on June 3, 1992 (some six months after negotiations began), Bishop's counsel demanded restitution pursuant to Civil Code[1] section 1793.2, subdivision (d)(2)(B). The demand notified Hyundai that its failure to comply would be considered "willful" and result in civil penalties under section 1794, subdivision (c). Following Hyundai's perceived dilatory response, Bishop sued for reimbursement of the vehicle's purchase price, incidental and general damages, asking they be trebled by way of penalty for willfully violating the Act as provided by section 1794, subdivision (c).

At trial, Bishop testified at length to her emotional distress resulting from the unavailability of her car upon which she had relied to attend college classes, and from her inability to procure new transportation, due in part because of her obligation to make the car payments to the lender. It was stipulated Bishop's restitution damages were $8,312.18, a sum the jury awarded while adding damages for "loss of use" in the amount of $17,223, incidental damages of $1,444 and emotional distress damages of $5,000. The jury found Hyundai's "Lemon Law" violation willful, making its total award $95,937.54. Bishop was awarded more than $50,000 in costs and attorney fees.

## II

■■■ Hyundai argues the damages awarded for emotional distress and "loss of use" not involving actual monetary loss, are not recoverable under the Act. Bishop contends the Act does not limit its scope to recovering actual monetary losses and those obtainable for breach of contract, but permits awards for emotional distress and nonmonetary losses as incidental or consequential damages which could be awarded under traditional tort theories. Section 1793.2, subdivision (d)(2)(B) states that in the case of restitution, the situation here, a buyer is also entitled to incidental damages as described in section 1794, including, "but not limited to, reasonable repair, towing, and rental car costs *actually* incurred by the buyer." (Italics added.) Section 1794 permits a civil penalty not exceeding two times the amount of actual damages on a showing of willful failure by the seller to comply with the provisions of the Act, "and other legal and equitable relief."

---

[1]All statutory references are to the Civil Code unless otherwise specified.

Section 1794, subdivision (b)(2) states "[w]here the buyer has accepted the goods [as here], sections 2714 and 2715 of the [California Uniform] Commercial Code shall apply, and the measure of damages shall include the cost of repairs necessary to make the goods conform." California Uniform Commercial Code section 2714 states that in a "proper case" any incidental or consequential damages *under the next section* may also be recovered. The next section, California Uniform Commercial Code section 2715, defines consequential damages resulting from a seller's breach to include "[a]ny loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by *cover* or otherwise." (Italics added.)

## III

In *Kwan v. Mercedes-Benz of North America, Inc.* (1994) 23 Cal.App.4th 174, 188 [28 Cal.Rptr.2d 371], the court construed section 1794 of the Act, concluding its clear mandate "is that the compensatory damages recoverable for breach of the Act are those available to a buyer for a seller's breach of a sales contract." As to the statute's reference to California Uniform Commercial Code sections 2714 and 2715 regarding consequential damages, it construed those as damages normally accruing from breaches of contract.

At the outset, we are faced with certain principles of statutory construction in determining the scope of the damages provisions applicable to this case. ■ The Legislature's intent as interpreted in *Kwan v. Mercedes-Benz of North America, Inc., supra,* 23 Cal.App.4th at pages 191-192, establishes it intended to limit damages available under the Act to those presently available in California Uniform Commercial Code sections 2711 through 2715. (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 3560 (1981-1982 Reg. Sess.).)

■ Bishop relies solely on the provision in California Uniform Commercial Code section 2715 relating to *consequential* damages to argue she could recover for her emotional distress and "loss of use" damages for the period in which she did not have a replacement vehicle even though incurring no out-of-pocket loss. There are problems with her position. First, the commentary following California Uniform Commercial Code section 2715 discusses the legislative intent regarding the type of consequential damages available under the Act. Examples of consequential damages recoverable under prior California law are the recovery of lost resale profits contemplated at the time of the contract, and recovery of damages for time and money spent in efforts to make goods conform to warranty under which they

were sold. The purposes, changes and new material added at the time California Uniform Commercial Code section 2715 was enacted in 1963, show the consequential damage provision was legislatively *limited* by this enactment. "Although the older rule at common law which made the seller liable for all consequential damages of which he had 'reason to know' in advance is followed, the liberality of that rule is modified by refusing to permit recovery unless the buyer could not reasonably have prevented the loss by cover or otherwise . . . [and] modifies the rule by requiring first that the buyer attempt to minimize his damages in good faith, either by cover or otherwise." (Deering's Ann. Cal. U. Com. Code, § 2715 (1986 ed.), com. 2, p. 274.)

The concept of "covering" is relevant only in the context of *commercial* transactions in which the buyer has an opportunity to purchase or obtain substitute goods to mitigate damages, and in such context, the buyer has a reasonable obligation to do so. (See Cal. U. Com. Code, § 2712.) "Cover" is a term describing a mechanism available to avoid lost profits in a commercial transaction where there is a failure to perform. The only decisions applying that section, other than those relating to injury to person or property, are those which relate to commercial transactions in which there were lost profits because of buyers' inability to resell or otherwise commercially use property of which the sellers' breach deprived them. There is no such issue in this case.

Although Bishop cites no cases in which consequential damages as defined in the California Uniform Commercial Code section 2715 have been determined to include noncommercial situations involving "loss of use" of personal vehicles, she nonetheless argues the provision is broad enough to permit both her emotional distress and "loss of use" damages. She cites "rental value" awards made in negligence and other tort cases which permitted damages to include the reasonable rental value of a replacement vehicle even for periods during which no expense was incurred. In light of the relevant legislative history and express language in the Act, we conclude California Uniform Commercial Code section 2715's reference to losses must be construed and applied in the context of monetary losses *actually* incurred.

## A.

Bishop does not claim she has incurred any reimbursable expense or that she lost a financial advantage during the period she was without a replacement vehicle. Bishop's claim for damages for "loss of use" expenses not actually incurred is akin to one for aggravation or distress, similar to

that rejected in *Kwan* v. *Mercedes-Benz of North America, Inc., supra,* 23 Cal.App.4th 174, as relating to emotional distress.

More importantly, the Legislature's express reference to damages recoverable in contract actions, not only clarifies what remedies are available for the recipient of a warranty, but also defines limits on the kinds and extent of damages that might otherwise be imposed. That purpose is clearly stated in the report by the Senate Committee on the Judiciary, 1981-1982 Regular Session. Thus, Bishop's reliance on *Young* v. *Bank of America* (1983) 141 Cal.App.3d 108 [190 Cal.Rptr. 122], which permitted tort damages under a different provision of the Song-Beverly Credit Card Act of 1971 (§ 1747 et seq.), is misplaced. ■ In addition, when, as here, a statute contains a specific provision relating to a particular subject, it will control as against a general provision more broadly stated. (*San Francisco Taxpayers Assn.* v. *Board of Supervisors* (1992) 2 Cal.4th 571, 577 [7 Cal.Rptr.2d 245, 828 P.2d 147].)

■ Section 1793.2, subdivision (d)(2)(B) refers to incidental damages to which the buyers are entitled under section 1794, including, but not limited to rental car costs *actually incurred* by the buyer. Bishop would have us disregard the reference to "actually incurred" or construe it as having no substantive meaning in the context of the kinds of damages available. She stresses the phrase "including, but not limited to," arguing that phrase suggests the Legislature intended there be no limitation on consequential damages. However, her interpretation would make the phrase "actually incurred," surplusage, a construction to be avoided. (*Grupe Development Co.* v. *Superior Court* (1993) 4 Cal.4th 911, 921 [16 Cal.Rptr.2d 226, 844 P.2d 545].) It is presumed every provision of the statute performs a useful function and in this case a reasonable construction to avoid surplusage is that "rental car costs actually incurred" is only one category of incidental or consequential damages. However, in the specific category of "rental car costs," the Legislature has placed a limiting term, one which is undeniably logical and would not otherwise have been recoverable under a contract theory of damages (except perhaps in a commercial context under the concept of "cover"). The limitation is consistent with all other statutory provisions and authorities referring to breach of contract damages in that it permits a buyer to recover monetary losses, but not be "compensated" for "losses" resulting in no monetary deprivation.

We are not free to ignore the Legislature's unambiguous indication of intent and supplement the Act's statutory remedies with additional ones drawn from the law of torts. (*Kwan* v. *Mercedes-Benz of North America, Inc.,*

*supra,* 23 Cal.App.4th at p. 191; *Gomez* v. *Volkswagen of America, Inc.* (1985) 169 Cal.App.3d 921, 928-929 [215 Cal.Rptr. 507].) As to Bishop's reliance on any holding in *Young,* it is an inapposite case in which consequential (emotional distress) damages were awarded from a breach of a noncontractual duty under different provisions of the Act. Bishop is not entitled to "loss of use" damages not actually incurred.

B.

The award for emotional distress damages must also be reversed for the reasons stated above; that is, because they may not be recovered in an action for breach of contract, they are unavailable in an action based on the Act. To the extent she argues emotional distress damages are recoverable under the tort theory of willful violation of the "Lemon Law" statute, for the reasons expressed in *Kwan* v. *Mercedes-Benz of North America, Inc., supra,* 23 Cal.App.4th 174, we reject this contention.

■ We disagree, however, with Hyundai's contention that evidence of Bishop's emotional distress is shown to have tainted the rest of the jury's verdict. First, a $5,000 award for emotional distress hardly shows a runaway jury. Second, the compensatory damages for restitution were agreed to and the $1,444 incidental damages are, if not completely accurate, minimal. That part of the award based upon the "rental value" of a never obtained replacement vehicle is being reversed, leaving only the issue of whether there is evidence to support the jury's finding Hyundai willfully violated the Act to support the damage penalty. Clearly there is. The evidence that Hyundai first delayed, then "low-balled" its offers and finally "stone-walled" Bishop even after notice of its contractual and statutory obligations, is overwhelming.

IV

■ Hyundai complains it was prejudiced by a jury instruction which erroneously advised jurors they could impose civil penalties for "willfully" failing to comply with the Act, by looking only at its conduct. That is, without the necessity of determining whether Hyundai was aware of its statutory obligations and intentionally declined to fulfill them. In *Kwan* v. *Mercedes-Benz of North America, Inc., supra,* 23 Cal.App.4th at page 185, the court addressed this precise issue and held the "willfulness" finding required to trigger such a penalty could not be based merely on a failure to comply which was the result of a good faith and reasonable belief the facts imposing statutory obligations were not present. While the court in *Kwan* analyzed a record in which the court had rejected two specific requests to instruct on this principle, here Hyundai neither objected to the willfulness instruction given nor offered any modification.

The instruction given reads as follows:

"You must determine whether or not the defendant's failure to comply with the Song-Beverly Act (the 'Lemon Law') was 'willful.' The word 'willful' does not necessarily imply anything blamable, or any malice or wrong toward the plaintiff, or perverseness or moral delinquency, but merely that the thing done or omitted to be done was done or omitted intentionally. It amounts to nothing more than this: that the defendant knows what it is doing and intends to do what it is doing.

"Under this instruction, the defendant acted 'willfully' if you determine that it knew of its obligations under the Song-Beverly Act but intentionally declined to fulfill them."

Hyundai agrees the second paragraph of the instruction states the law on "willfulness" correctly. It accurately notes, however, the first paragraph, standing alone, would permit the jurors to make a finding of willfulness even though Hyundai was unaware of its obligations or had a good faith belief it was fulfilling them. Hyundai contends the amalgamation of these conflicting principles in a single instruction necessarily requires reversal here where conflicting evidence was presented on the issue of willfulness. While we recognize the error in the formulation of this instruction and the possibility of misdirection, we conclude Hyundai's failure to object or request a modification of this instruction to state the law, of which it was well aware, in a more positive manner, amounts to a waiver of this issue on appeal.

Before the matter was given to the jury, Hyundai moved for a directed verdict on the issue of willfulness, stating it believed the evidence was uncontradicted that Hyundai at all times acted under the honest belief the "Lemon Law" did not apply to this transaction for reasons counsel set out in detail. Counsel went on to say the evidence was uncontradicted Hyundai employees were of the view they did not have obligations to Bishop under the Act, so that there could be no willful violation of the Act. Counsel specifically referred to *Ibrahim* v. *Ford Motor Co.* (1989) 214 Cal.App.3d 878 [263 Cal.Rptr. 64], when arguing the issue of willfulness to the court. That decision emphasizes the predicate to a willfulness finding is a determination a seller knows its obligations under the Act but intentionally declines to fulfill them. In spite of Hyundai's expressed awareness of the proposed instruction and the correct law, counsel did not object to the *form* of the willfulness instruction nor did he offer modification or alternative instructions. Nor is it likely the jurors were misled. Bishop's counsel in final argument emphasized her case for a statutory penalty rested on the jury

finding Hyundai knew its obligations under the Act, but intentionally declined to fulfill them.

A failure to object to civil jury instructions will not be deemed a waiver where the instruction is prejudicially erroneous as given, that is which is an incorrect statement of the law. On the other hand, a jury instruction which is incomplete or too general must be accompanied by an objection or qualifying instruction to avoid the doctrine of waiver. (*Suman* v. *BMW of North America, Inc.* (1994) 23 Cal.App.4th 1, 9 [28 Cal.Rptr.2d 133].) Here, Hyundai's counsel showed he was totally conversant with the law and the correct elements of willfulness required by the penalty provisions of the Act. Although aware of the wording of the instruction to be given, he indicated satisfaction with the wording of the instruction by his silence when given the opportunity to object or propose modifications. To the extent Hyundai now argues the internal inconsistency of the principles in the two paragraphs mandate a finding of prejudice sufficient to overcome the doctrine of waiver, we note that jury arguments focused the jury on the correct principle in the second paragraph. On this record, we are satisfied Hyundai's deliberate silence at a time when this perceived instructional error could have been resolved is appropriately treated as a waiver of the issue for this appeal.

V

■ Before trial, the court ruled *in limine* that offers to settle and/or settlement discussions made after the lawsuit was filed would not be admissible at trial. Accordingly, the trial court refused Hyundai's request to introduce evidence that, after the lawsuit was filed it continued to engage in settlement negotiations and make escalating monetary settlement offers. At trial, Hyundai proffered evidence of several settlement discussions and postfiling offers, including the dollar amounts, contending the evidence was relevant to show it never viewed the case as one triggering obligations under the Act. The court permitted Hyundai to offer the evidence insofar as it related to its state of mind regarding its belief it was obligated to comply with the Act, but excluded the specific dollar amounts. While the court may have relied in part on the *in limine* ruling made by a different judge, it cited Evidence Code section 352 as a reason to exclude the dollar amounts, commenting the probative value to the relevant issues in the case was minimal. The court's perception was correct, and the exclusion was well within its discretion.

DISPOSITION

The judgment is modified by striking the $5,000 award for emotional distress and the $17,223 for "loss of use." As modified, the verdict of $9,756.18 is trebled, resulting in a final judgment of $29,268.54. As modified, the judgment is affirmed. Parties to bear their own costs on appeal.

Nares, J., concurred.

BENKE, J.—I respectfully dissent. I agree the trial court erred in admitting evidence concerning and allowing the jury to award damages for emotional distress. I do not agree that doing so was harmless.

Cathy Bishop was a young person. Indeed, she was so young it was necessary her parents sign the purchase contract. Bishop testified the loss of use of her car had a serious effect on her life. She was unable to continue with school since she was without transportation. She was unhappy with the need to make payments on a car she could not use. Bishop stated the lack of a vehicle, the result of Hyundai's unreasonableness, resulted in a loss of independence to such a degree she eventually did not want to go out. Bishop sought medical care for her lack of sleep and weight loss that she attributed to the stress of dealing with Hyundai. Bishop's doctor recommended she drop out of school. In argument Bishop's counsel noted the car was the first one she had purchased, noted Bishop's youth, argued the incident affected Bishop's sense of independence, caused her to leave school and resulted in a level of stress that required medical attention.

I conclude it is reasonably probable that had the trial court not admitted evidence concerning the life altering emotional distress suffered by Bishop, Hyundai would have received a more favorable result. My particular concern is with the jury's award of the maximum civil penalty. The jury awarded stipulated damages of $8,312.18, emotional distress damages of $5,000, loss of use damages of $17,223 and incidental damages of $1,444. The jury then awarded the maximum civil penalty allowed under the act, twice the total damages. The result was an award of $95,937.54.

While my colleagues, in eliminating the award for emotional distress and loss of use, have reduced the damages considerably, they retain the award of the maximum civil penalty by trebling the damages that remain. Evidence concerning the emotional suffering of a young person obviously has a great

capacity to affect a jury's view of a case. In the Song-Beverly Consumer Warranty Act context the jury is given little if any guidance concerning the factors relevant to determining the amount of the civil penalty. The jury is merely told if it finds the defendant's failure to comply with the act was willful, it may include an award for a civil penalty in any amount not exceeding twice the amount awarded as compensatory damages. Here the jury imposed the maximum civil penalty allowed. It is reasonable to believe the erroneous admission of emotional distress evidence affected the jury's evaluation of damages and the civil penalty in particular. I believe the erroneous admission of evidence concerning Bishop's emotional distress was prejudicial and the judgment should be reversed. (See *Pool* v. *City of Oakland* (1986) 42 Cal.3d 1051, 1069 [232 Cal.Rptr. 528, 728 P.2d 1163].)