Filed 7/6/16  Syson v. Montecito Bank & Trust CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION SIX

| | |
|---|---|
| STEPHEN R. SYSON et al., | 2d Civil No. B260747 |
| Plaintiffs and Appellants, | (Super. Ct. No. 1402166) |
| | (Santa Barbara County) |
| v. | |
| MONTECITO BANK & TRUST, | |
| Defendant and Respondent. | |

Appellants Stephen R. Syson and Nanci E. Syson were longtime customers of respondent Montecito Bank & Trust (Montecito),[1] with whom they had a home equity line of credit.  After their house burned in a wildfire, they became embroiled in a dispute with Montecito over the release of insurance proceeds.  The instant lawsuit ensued. Montecito moved to have the Sysons' claims arbitrated pursuant to arbitration clauses in the loan documents.  The Sysons opposed the motion on several grounds, including that the arbitration provisions were unconscionable.

The trial court ordered the Sysons' legal claims to be arbitrated and stayed their remaining equitable claims.  After the arbitrator ruled in favor of Montecito on all

---

[1] Over a 20-year period beginning in the early 1990s, Stephen Syson's businesses deposited approximately $1.5 million per year into accounts at Montecito.

the legal claims, the trial court confirmed the award and granted summary judgment to Montecito on the equitable claims based on res judicata principles.

The Sysons contend that the arbitration clauses were unconscionable, res judicata did not apply to their equitable claims, and the trial court erroneously denied their request to stay arbitration under the mistaken belief that it lacked discretion to do so. We affirm.

FACTS AND PROCEDURAL HISTORY

The Sysons purchased their family home in Santa Barbara with a loan from Montecito secured by a deed of trust. Montecito sold the loan, which eventually ended up being held by Bank of America.

The Sysons also obtained a home equity line of credit (Home Equity Access Line or HEAL) from Montecito secured by a subordinate deed of trust. As part of the HEAL transaction, the Sysons signed a four-page "Credit Agreement and Disclosure" (Credit Agreement) containing a mandatory arbitration clause. A year later, they signed a similar agreement, also containing a mandatory arbitration clause, that reduced their credit limit. The nine-page deed of trust securing the HEAL also contained an agreement to arbitrate any disputes.

Subsequently, a wildfire destroyed the Sysons' home. The Sysons' insurer settled their loss claim for nearly $1.1 million. The funds were deposited with Countrywide Financial, Bank of America's predecessor in interest, and were made jointly payable to Countrywide, Montecito, and the Sysons. Under the agreements between Montecito and the Sysons, Montecito had an ownership interest in the insurance proceeds, which served as additional security for the Sysons' outstanding obligations under the Credit Agreement. If property damage impaired Montecito's security interest in the property, Montecito could "retain the [insurance proceeds] and apply [them] to . . . the restoration and repair of the Property," reimbursing the Sysons after they made satisfactory repairs.

At issue in this case is $228,581 of the insurance proceeds that Bank of America released to the Sysons in October 2011 (the held proceeds). The Sysons

2

deposited these funds with Montecito. A week and a half later, Montecito refused the Sysons' request to release the held proceeds.

At the time, the Sysons owed Montecito more than $300,000 under the Credit Agreement. They had expended close to one million dollars on reconstruction. The value of their property in its partially-constructed condition was at most one million dollars, "substantially less than the liens against it"—approximately $1.6 million—and "less than the amount of the first lien held by Bank of America." The Sysons told Montecito that they would need approximately $1.5 million to complete the reconstruction and that they had "an independent source of funds" for the remaining work. Montecito repeatedly requested information about their source of funds, but they did not provide it.

Montecito offered (1) to release the held proceeds when the Sysons could show that reconstruction had progressed to the point that the held proceeds would be sufficient to complete the work or, alternatively, (2) to deposit the held proceeds in a control account along with the remaining insurance proceeds held by Bank of America when the Sysons deposited sufficient additional funds to complete the outstanding work. After receiving these proposals, the Sysons paid $350,000 towards the purchase of a new house rather than using those funds for reconstruction.

The Sysons sued Montecito to recover "the possession and use of" the held proceeds. The Sysons claimed that Montecito's refusal to return these funds to them prevented them from rebuilding their home and subjected them to a threatened lawsuit by Bank of America, which was seeking to recover the held proceeds from them. They alleged causes of action for breach of contract, intentional interference with contract, violation of the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.), fraud, negligent misrepresentation, and constructive trust (collectively, legal claims), as well as declaratory and injunctive relief (collectively, equitable claims).

Montecito moved to compel arbitration and stay the action pending the completion of arbitration. In opposing enforcement of the arbitration provisions, the

3

Sysons asserted that they were procedurally unconscionable. The trial court ordered that the legal claims be arbitrated and stayed the action pending the arbitrator's decision.

The arbitrator ruled in favor of Montecito on all the legal claims and awarded Montecito $150,468 in attorneys' fees. The trial court confirmed the award. Montecito then moved for summary judgment on the equitable claims, which the trial court granted, ruling that the arbitrator's award acted as res judicata.

DISCUSSION

*Unconscionability*

"'[U]nconscionability has both a "procedural" and a "substantive" element,' the former focusing on "'oppression'" or "'surprise'" due to unequal bargaining power, the latter on "'overly harsh'" or "'one-sided'" results. [Citation.] 'The prevailing view is that [procedural and substantive unconscionability] must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.' [Citation.] But they need not be present in the same degree. 'Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves.' [Citations.] In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114.) We review the trial court's ruling on a motion to compel arbitration for substantial evidence where the facts are in conflict and de novo where they are not. (*Fagelbaum & Heller LLP v. Smylie* (2009) 174 Cal.App.4th 1351, 1360.)

*Procedural Unconscionability*

The Sysons contend that the arbitration clauses are procedurally unconscionable because they were "buried" in small-print contracts of adhesion drafted by the party (Montecito) with superior bargaining power and there is no evidence that Montecito provided them with a copy of the relevant arbitration rules. Regarding their first contention, the arbitration provision is not hidden. The original and modified loan

4

agreements are short, four-page documents. The arbitration clauses appear on the last page not far above the Sysons' signatures in a separate paragraph captioned "Arbitration." They are printed in the same font size used throughout the agreements. Their existence should not have come as a surprise. Montecito "was under no obligation to highlight the arbitration clause of its contract, nor was it required to specifically call that clause to [the Sysons'] attention." (*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 914.) Requiring the Sysons to read all four pages of a contract involving hundreds of thousands of dollars and lasting 14 years was not oppressive. (See *id.* at p. 915 ["'[I]t is generally unreasonable . . . to neglect to read a written contract before signing it'"].)

As for the Sysons' second contention, the arbitration clauses require that disputes "be arbitrated pursuant to the Rules of the American Arbitration Association [AAA] in effect at the time the claim is filed." The Sysons' argument that there is no evidence they received a copy of these rules "might have force if [their] unconscionability challenge concerned some element of the AAA rules of which [they] had been unaware when [they] signed the arbitration agreement. But [their] challenge to the enforcement of the agreement has nothing to do with the AAA rules; [their] challenge concerns only matters that were clearly delineated in the agreement [they] signed." (*Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1246.) Moreover, the Sysons themselves successfully negotiated for a modification to the arbitration agreement "that the arbitration be administered by, and pursuant to the rules of, JAMS rather than the [AAA]." Their knowledge of the AAA rules is immaterial.

Although "the adhesive nature of [a] contract is sufficient to establish *some* degree of procedural unconscionability" (*Sanchez v. Valencia Holding Co., LLC*, *supra*, 61 Cal.4th at p. 915, italics added), there is nothing oppressive or surprising about the arbitration clauses here other than the Sysons' assumed inability to negotiate the terms. "When . . . there is no other indication of oppression or surprise, 'the degree of procedural unconscionability of an adhesion agreement is low, and the agreement will be

enforceable unless the degree of substantive unconscionability is high.' [Citations.]" (*Serpa v. California Surety Investigations, Inc.* (2013) 215 Cal.App.4th 695, 704.)

*Substantive Unconscionability*

The Sysons contend that the arbitration provisions are substantively unconscionable because they allow court adjudication of claims Montecito is likely to bring while requiring arbitration of claims they are likely to bring and because the deed of trust contains a one-sided provision requiring the Sysons to reimburse Montecito for "reasonable expenses" it incurs for enforcing its rights. By failing to present these or any arguments regarding substantive unconscionability in the trial court, however, they have forfeited them. (See *Pearson Dental Supplies, Inc. v. Superior Court* (2010) 48 Cal.4th 665, 681.) Regardless, their claims of substantive unconscionability lack merit.

The deed of trust, in a paragraph captioned "Attorneys' Fees; Expenses," provides that "[w]hether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses [Montecito] incurs that in [its] opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the [Sysons'] indebtedness." We have previously held that "Civil Code section 1717 makes such clauses mutual so that when a contract provides for only a particular party to be awarded fees and costs, the prevailing party obtains the right. [Citation.]"[2] (*Severtson v. Williams Construction Co.* (1985) 173 Cal.App.3d 86, 95 (*Severtson*).) Section 1717's mutuality requirement is incorporated into the arbitration agreements here. (See *Edwards v. Arthur Andersen LLP* (2008) 44 Cal.4th 937, 954 ["'""[A]ll applicable laws in existence when an agreement is made, which laws the parties are presumed to know and to have had in mind, necessarily enter into the contract and form a part of it, without any stipulation to that effect, as if they were expressly referred to and incorporated"'""].) Because the attorney's fee provision in the deed of trust applies mutually by law, it is not substantively unconscionable.

---

[2] All further statutory references are to the Civil Code unless otherwise specified.

6

The Sysons rely on *Carmona v. Lincoln Millennium Car Wash, Inc.* (2014) 226 Cal.App.4th 74, 88-89, and *Samaniego v. Empire Today LLC* (2012) 205 Cal.App.4th 1138, 1147 (*Samaniego*), which held otherwise. The reasoning in these cases is inconsistent with *Severtson*, and we decline to follow them.

In *Samaniego*, "one of several one-sided provisions" in an arbitration agreement required the plaintiffs to pay any attorneys' fees incurred by the defendant but imposed no reciprocal obligation on the defendant. (*Samaniego*, *supra*, 205 Cal.App.4th at p. 1147.) Addressing the defendant's argument that "one-way fee shifting provisions that benefit only employers violate both the Labor Code and commercial arbitration rules," the court stated, "according to [defendant, the provision] isn't unconscionable because it's illegal and, hence, unenforceable. To state the premise is to refute [defendant's] logic. The argument is unpersuasive." (*Id.* at p. 1147; accord *Carmona v. Lincoln Millennium Car Wash, Inc.*, *supra*, 226 Cal.App.4th at p. 88 [concluding, based on *Samaniego*, that one-sided "attorney fee provision is not conscionable merely because section 1717 might provide employees relief from the provision's one-sidedness"].)

*Samaniego* assumed that a one-sided fee provision was unenforceable. Severance of an unconscionable contractual provision is normally an available remedy where it would further the interests of justice. (*Armendariz v. Foundation Health Psychcare Services, Inc.*, *supra*, 24 Cal.4th at p. 124; see § 1670.5, subd. (a).) As we held in *Severtson*, however, section 1717 saves a one-sided fee provision in an arbitration agreement by imposing a mutuality requirement. "Section 1717 was enacted to establish mutuality of remedy where contractual provision makes recovery of attorney's fees available for only one party [citations], and to prevent oppressive use of one-sided attorney's fees provisions. [Citation.]" (*Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 128.)

*Carmona* acknowledged the effect of section 1717 but supplanted the Legislature's chosen remedy with its own. We are not free to do so. (See *Bishop v. Hyundai Motor America* (1996) 44 Cal.App.4th 750, 757 [courts may not "ignore the

7

Legislature's unambiguous indication of intent and supplement . . . statutory remedies with additional ones"].)

Nor is it clear why such a result furthers the interests of justice. Severing a one-sided fee provision—as opposed to applying it mutually—discourages consumers from pursuing meritorious contractual claims because it prevents them from recovering their legal expenses when they prevail. Consumers like the Sysons with comparatively weak claims are left with a greater incentive to pursue them: even if they lose, they do not risk having to pay the company's legal fees. There is no justice in a rule promoting meritless over meritorious claims.

The Sysons also claim that the arbitration requirement is substantively unconscionable because it "appl[ies] almost exclusively to those claims that would ordinarily be brought [by them], and excepts all claims that would ordinarily be brought by [Montecito]"—judicial foreclosure and self-help remedies. To the contrary, the arbitration agreement provides "that in the event of an action for judicial foreclosure . . . [,] the court shall refer to arbitration as much of such action, including counterclaims, as lawfully may be referred to arbitration." Although the agreement does preserve Montecito's ability to pursue nonjudicial foreclosure, there is nothing unconscionable about excluding self-help remedies from arbitration. (*Sanchez v. Valencia Holding Co., LLC*, *supra*, 61 Cal.4th at p. 922.) To the extent *Flores v. Transamerica HomeFirst, Inc.* (2001) 93 Cal.App.4th 846 reached the opposite conclusion (*id.* at pp. 854-855), it is no longer good law.

With minimal procedural unconscionability and no showing of substantive unconscionability, the trial court properly found the arbitration agreements enforceable and compelled arbitration of the Sysons' legal claims.

*Application of Res Judicata to Equitable Claims*

The Sysons assert that the trial court erred in granting summary judgment on the basis that the arbitrator's decision acted as res judicata on their equitable claims. Private arbitration awards are given strict res judicata or claim preclusive effect to

subsequent suits involving identical causes of action.  (See *Richard B. LeVine, Inc. v. Higashi* (2005) 131 Cal.App.4th 566, 577.)

The Sysons argue that res judicata does not apply to their equitable claims because the doctrine "only applies to [claims] which were or could have been litigated in the arbitration" (*Truck Ins. Exchange v. Superior Court* (1996) 51 Cal.App.4th 985, 998) and the arbitration agreement "expressly preclude[s] the arbitrator from hearing equitable claims."  The agreement prohibits the arbitrator from awarding injunctive relief.  It does not prohibit the arbitrator from awarding declaratory relief, although neither does it prohibit a party from seeking such equitable relief in a judicial forum.

Regardless, California utilizes a "primary right" theory to determine whether causes of action are identical.  (*Richard B. LeVine, Inc. v. Higashi*, *supra*, 131 Cal.App.4th at p. 575.)  "Under the 'primary rights' theory, a cause of action arises from the invasion of a primary right.  Although different grounds for legal relief may be asserted under different theories, conduct that violates a single primary right gives rise to only one cause of action.  [Citation.]"  (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 818, fn. 1.)  In other words, "[t]he cause of action is the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced.  [Citation.]"  (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 798.)

As the trial court accurately found, "[t]he primary right [the] Sysons seek to litigate is the right to have the insurance proceeds paid to them.  This is the primary right the arbitrator determined.  The arbitrator determined that, under the terms of the deed of trust, [Montecito] did not wrongfully withhold the insurance proceeds and acted reasonably in retaining the proceeds.  The arbitrator determined that [Montecito] had not breached the contract between the parties because it had committed the proceeds to restoration and repair of the property."

The Sysons do not dispute this.  They merely misunderstand the doctrine of claim preclusion.  *Truck Insurance Exchange*, on which they rely, is inapposite.  It involved an insurer's failure to tender a defense.  The arbitrator in that case did not

9

determine insurance coverage issues, the primary right at issue in the litigation, because the arbitration agreement prohibited that issue from being arbitrated. (*Truck Ins. Exchange v. Superior Court*, *supra*, 51 Cal.App.4th at p. 998.) Here, the arbitration agreements did not prohibit the arbitrator from determining the primary right at issue in the Sysons' equitable claims, it merely prohibited the arbitrator from awarding certain forms of relief.

*Trial Court's Discretion to Stay Arbitration*

The Sysons argue that the trial court erroneously concluded "that because the arbitration provisions are governed by the Federal Arbitration Act (FAA), the court had no discretion to deny or stay arbitration under Code of Civil Procedure section 1281.2, subdivision (c)." We disagree. "The FAA requires courts to enforce arbitration provisions. (9 U.S.C., § 2.) It does not authorize courts to stay arbitration pending resolution of litigation, or to refuse to enforce a valid arbitration provision to avoid duplicative proceedings or conflicting rulings. [Citation.]" (*Mastick v. TD Ameritrade, Inc.* (2012) 209 Cal.App.4th 1258, 1263.) The trial court correctly understood the limits of its discretion and acted within them.

DISPOSITION

The judgment is affirmed. Costs to respondent.

NOT TO BE PUBLISHED.


PERREN, J.


We concur:


GILBERT, P. J.


YEGAN, J.

10

Donna D. Geck, Judge

Superior Court County of Santa Barbara

_____

Esner, Chang & Boyer, Holly N. Boyer, Shea S. Murphy and Joseph S. Persoff for Plaintiffs and Appellants.

Seed Mackall LLP, Peter A. Umoff and Alan D. Condren for Defendant and Respondent.