[No. B061162. Second Dist., Div. Three. Mar. 8, 1994.]

MARTIN SUMAN, Plaintiff and Appellant, v.
BMW OF NORTH AMERICA, INC., Defendant and Respondent.

## COUNSEL

Hutchens & Aguirre, Lawrence J. Hutchens and Rodolfo A. Aguirre for Plaintiff and Appellant.

Hill, Wynne, Troop & Meisinger, C. Dennis Loomis, Blaine Greenberg and Elizabeth A. Casey for Defendant and Respondent.

## OPINION

**CROSKEY, J.**—Plaintiff Martin Suman (plaintiff) appeals from a judgment rendered after a jury trial in which the trial court construed, in favor of defendant BMW of North America, Inc. (defendant), certain civil penalty provisions of the Song-Beverly Consumer Warranty Act. On appeal, plaintiff challenges the trial court's construction of those provisions. Defendant defends the trial court's construction and disputes the plaintiff's right to make those challenges. We find (1) plaintiff did not waive his right to challenge the court's ruling and (2) the trial court erred in construing the civil penalty provisions. We reverse the judgment insofar as it awarded plaintiff zero dollars in civil penalties pursuant to the jury's special verdict and we remand this case for retrial on the issue of penalties.

## PROCEDURAL AND FACTUAL BACKGROUND

On September 5, 1989, plaintiff filed this action against defendant and against a local car dealership and an automotive financing company. The latter two defendants were later dismissed from the suit. According to the complaint, in June 1987 plaintiff purchased a certain 1988 model vehicle manufactured by defendant (the car). Defendant provided an express warranty with the car. Thereafter, the car failed to perform properly because of defendant's defective manufacturing. After a reasonable number of attempts by defendant to repair the car, defendant failed to return the consideration paid by plaintiff for the car or to replace the defective car.

Plaintiff's testimony at trial established that he had, on approximately 16 occasions, taken the car to several different BMW dealerships to be repaired for a "shimmy/shaking" problem. He testified that each time he was told the problem was fixed, and each time that representation turned out to be false. On more than one occasion he requested that defendant either give him another car or give him his money back. Defendant declined to do either. Eventually he just left the car at a BMW dealership for repairs and never picked it up. It was repossessed by the finance company and sold. At trial, plaintiff and defendant stipulated that defendant gave plaintiff a written warranty on the car, and that defendant never offered to replace the car or refund the purchase price (less the amount directly attributable to plaintiff's use of the car before he discovered the problem).

The jury found that (1) the car suffered from a nonconformity which substantially impaired its use, value or safety, (2) defendant had been given the opportunity to repair the nonconformity but had not repaired it after a reasonable number of attempts, and (3) plaintiff suffered actual damages in the amount of $33,516.86 as a result of defendant's conduct (this figure was reduced by an offset of $906.99, pursuant to stipulation of counsel). These findings became part of the "judgment on special verdict" and are not challenged by plaintiff. Instead, plaintiff challenges the portion of the jury's special verdict which failed to assess a civil penalty against defendant under Civil Code section 1794.

## CONTENTIONS OF THE PARTIES

On appeal, plaintiff contends the trial court improperly construed the provisions of the Song-Beverly Consumer Warranty Act (the Act, Civ. Code, § 1790 et seq.)[1] which relate to civil penalty awards in consumer suits; he argues that the trial court's improper construction requires reversal of the

---

[1]Unless otherwise indicated, all statutory references herein are to the Civil Code.
Since trial of this case, the Act has been amended in ways not impacting this appeal.

judgment and a remand for retrial of the civil penalty issue. In addition, plaintiff asserts that (1) the trial court gave improper instructions to the jury and (2) those instructions denied him his right to have the jury consider certain of the possible civil penalties.

Defendant contends plaintiff is precluded from complaining that the proper instruction was not given to the jury since he never proposed the instruction which he now insists should have been given. Alternatively, defendant argues that, in any event, plaintiff's construction of the relevant provision in the Act would render that provision unconstitutional.

## DISCUSSION

### 1. *Statutory Scheme for Consumer Suits*

The Act has its own provisions for consumer suits against persons who fail to comply with their obligations under the Act or under an implied or express warranty or service contract. Section 1794, subdivision (a), provides that "Any buyer of consumer goods who is damaged by a failure to comply with any obligation under [the Act] or under an implied or express warranty or service contract may bring an action for the recovery of damages and other legal and equitable relief."[2] "Consumer goods," as that term is used in the Act, are defined in section 1791, which states in relevant part: " 'Consumer goods' means any new product or part thereof that is used, bought, or leased for use primarily for personal, family, or household purposes, except for clothing and consumables."

"The measure of the buyer's damages in [a section 1794 action] shall include the rights of replacement or reimbursement as set forth in subdivision (d) of Section 1793.2 [as well as certain rights set out in the Commercial Code]." (§ 1794, subd. (b).) When the consumer goods are new motor vehicles, the consumer's "replacement or reimbursement" rights are set out in paragraph (2) of subdivision (d) of section 1793.2, which states: "If the manufacturer or its representative in this state is unable to service or repair a new motor vehicle . . . to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either promptly replace the new motor vehicle . . . or promptly make restitution to the buyer . . . . However, the buyer shall be free to elect restitution in lieu of replacement, and in no event shall the buyer be required by the manufacturer to accept a replacement vehicle."

---

[2]Hereinafter, all references to suits brought pursuant to section 1794 will be to "section 1794 suits" or "section 1794 actions."

The parties stipulated that defendant gave plaintiff a written warranty on the car.

Besides provisions for recovery of damages, section 1794 also contains provisions whereby a buyer might recover civil penalties against the defendant in a section 1794 suit. One such provision concerns a defendant's *willful* failure to comply with the Act. Subdivision (c) states: "If the buyer establishes that the failure to comply [with any obligation under the Act or under an express warranty or service contract] was willful, the judgment may include, in addition to the amounts recovered under subdivision (a), a civil penalty which shall not exceed two times the amount of actual damages. . . ."

Subdivision (e) of section 1794 contains separate provisions for civil penalties. Subdivision (e) relates solely to the new motor vehicle "restitution or replacement" provisions in paragraph (2) of subdivision (d) of section 1793.2, which are set out above. Subdivision (e) reads: "(e)(1) Except as otherwise provided in *this* subdivision, if the buyer establishes a violation of [the 'restitution or replacement' provisions in] paragraph (2) of subdivision (d) of Section 1793.2, the buyer . . . may recover a civil penalty of up to two times the amount of damages. [¶] (2) If the manufacturer maintains a qualified third-party dispute resolution process which substantially complies with Section 1793.22, the manufacturer shall not be liable for any civil penalty *pursuant to this subdivision.*[3] [¶] (3) After the occurrence of the events giving rise to the presumption established in subdivision (b) of Section 1793.22,[4] the buyer may serve upon the manufacturer a written notice requesting that the manufacturer comply with [the 'restitution or replacement' provisions in] paragraph (2) of subdivision (d) of Section 1793.2. If the buyer fails to serve the notice, the manufacturer shall not be liable for a civil penalty *pursuant to this subdivision.* [¶] (4) If the buyer serves the notice described in paragraph (3) and the manufacturer complies with paragraph (2) of subdivision (d) of Section 1793.2 within 30 days of the service of that notice, the manufacturer shall not be liable for a civil penalty *pursuant to this subdivision.*[5] [¶] (5) If the buyer recovers a civil penalty under subdivision (c), the buyer may not also recover a civil penalty *under this subdivision* for the same violation." (Italics added.)

In summary then, there are two separate means by which a plaintiff in a section 1794 suit might recover a civil penalty against the defendant. Subdivision (c) of section 1794 covers civil penalties for suits concerning *any*

---

[3]Defendant stipulated it had no such qualified third party dispute resolution process.

[4]Subdivision (b) of section 1793.22 states in relevant part: "It shall be presumed that a reasonable number of attempts have been made to conform a new motor vehicle to the applicable express warranties if, within one year from delivery to the buyer or 12,000 miles on the odometer of the vehicle, whichever occurs first, . . . the same nonconformity has been subject to repair four or more times by the manufacturer or its agents. . . ."

[5]The parties stipulated that defendant did not offer to either replace the car or refund the purchase price, less the amount directly attributable to its use by the plaintiff before discovery of the nonconformity.

type of "consumer goods," as that term is used in the Act. Subdivision (e) of section 1794 is more limited in its application and permits such penalties when the consumer goods at issue are new motor vehicles.

Although subdivision (e)(5) of section 1794 prohibits a plaintiff from recovering both types of penalties for the same violation, a court would not be prohibited from instructing a jury with respect to both types of penalties for the same violation if there was substantial evidence presented at trial to support an award for each type of penalty. Indeed, the court would be required to so instruct. The jury would, of course, also be instructed that if it determined a civil penalty should be imposed, it could not award both types of penalties to the plaintiff.

### 2. *The Trial Court's Application of Section 1794*

#### a. *The Issue Presented by the Parties*

In the instant case, prior to the taking of testimony from witnesses, the trial court was presented with the following issue: does the "*willful* failure to comply" provision in subdivision (c) of section 1794 also apply to subdivision (e) of that section so that the plaintiff in a section 1794 suit, who seeks civil penalties under subdivision (e), has to meet the burden of proof required in subdivision (c) regarding willfulness? Stated another way, does the limitation of subdivision (e) to violations of the "replacement or reimbursement" rule for defective new motor vehicles indicate that subdivision (e) operates independently of subdivision (c)?

Defendant asserted that if plaintiff intended to bring this case within subdivision (e) of section 1794, he had the burden of proving that defendant willfully failed to comply with the replace or reimburse provisions in section 1793.2, subdivision (d)(2). Plaintiff contended that subdivision (c)'s requirement of "willfulness" does not carry over into subdivision (e). Plaintiff asserted that subdivision (e) is a totally separate means of obtaining a civil penalty, and by its very terms does not specifically require a showing of willfulness. After listening to the parties' arguments, the trial court tentatively ruled that willfulness was an element of both subdivision (c) and subdivision (e) of section 1794.

After opening statements, the court again took up the issue of willfulness as it applies to subdivision (e) of section 1794. The court indicated that it interpreted section 1794 to require a showing of willfulness for *any* civil penalties. The trial court stated it would read a certain case which plaintiff hoped would change the court's mind and plaintiff's attorney replied: "So,

I'll just submit it on that. We are perfectly willing to go forward. Actually, willfulness isn't that big a deal." To that the court replied: "That's better. I will keep an open mind though, but I think you have to show that."

On appeal, defendant argues that by saying "Actually, willfulness isn't that big a deal," plaintiff's attorney meant to abandon the issue of whether subdivision (e) requires a finding of willfulness. However, defendant points to nothing in the reporter's transcript which supports that interpretation; nor is there anything cited by plaintiff to indicate what his counsel meant by that remark. In any event, we do not find that plaintiff abandoned the issue; plaintiff's attorney clearly told the trial court that he would submit the issue on his argument and on the case authority he wanted the court to read. Additionally, after the jury was sent to deliberate the case, the court discussed with counsel for both parties what they might want to do to "make a record." Both attorneys mentioned certain jury instructions, with plaintiff's attorney stating: "Just on our side, and I believe we have addressed it, as far as instructions go, we objected to the requirement of willfulness in reaching a civil penalty. And to follow that up, that would be Number 6 on the special verdict form, insofar as it mentions 'willful'." Such a comment from plaintiff's attorney does not indicate the issue concerning subdivision (e) of section 1794 was waived by plaintiff; and defense counsel made no reply statement indicating he believed plaintiff had already waived the issue.

### b. *The Jury Instructions*

In conformity with its decision that subdivision (e) of section 1794 requires a finding of willfulness, the court gave the jury two instructions on civil penalties. The first told the jurors that before they could impose a civil penalty, plaintiff would have to prove by a preponderance of the evidence that defendant "willfully failed to comply with its obligation(s) under the terms of its express warranty." The second instruction stated the jury could include a civil penalty in its award if it found that defendant's "failure to fulfill its obligations under the law was willful." As for the term "willful," the following instruction was given: "The word 'willful,' when applied to Defendant's alleged failure to comply with [the Act] requires that the manufacturer, herein [defendant], knew of its obligation under [the Act] and intentionally declined to fulfill its obligation. 'Willfulness' does not require an intent to violate the law."

The special verdict form given to the jury included the following question: "What amount of civil penalty, if any, do you assess against [defendant] for willful refusal to refund or reimburse the purchase price of plaintiff's vehicle (not to exceed two times the amount of actual damages)?" The jury's answer to that question was "0."

### 3. *Plaintiff's Right to Contest the Jury Instructions*

The trial court's decision regarding proof of willfulness and the court's jury instructions on civil penalties form the basis of plaintiff's appeal. However, defendant raises a threshold issue—whether plaintiff has waived his right to contest the jury instructions on willfulness because he never offered his own instructions reflecting his own interpretation of section 1794. Defendant argues that, assuming arguendo plaintiff's reading of section 1794, subdivision (e) is correct, plaintiff had a duty to present to the trial court a proposed instruction which explained to the jury the alternatives presented by subdivisions (c) and (e) of section 1794, and since plaintiff did not fulfill that duty, plaintiff has waived his right to complain about instructional error.

Given the trial court's indication that it did not agree with plaintiff's position that subdivision (e) must be construed and applied separately from subdivision (c), it is not surprising that plaintiff did not offer an instruction based on his clearly rejected interpretation. Additionally, given settled law regarding instructional error, defendant's assertion of waiver has no validity if plaintiff's interpretation of section 1794 is correct.

When a trial court gives a jury instruction which is correct as far as it goes but which is too general or is incomplete for the state of the evidence, a failure to request an additional or a qualifying instruction will waive a party's right to later complain on appeal about the instruction which was given. (*Mock* v. *Michigan Millers Mutual Ins. Co.* (1992) 4 Cal.App.4th 306, 333-334 [5 Cal.Rptr.2d 594].) However, when a trial court gives a jury instruction which is prejudicially *erroneous as given*, i.e., which is an incorrect statement of law, the party harmed by that instruction need not have objected to the instruction or proposed a correct instruction of his own in order to preserve the right to complain of the erroneous instruction on appeal. (*Ibid.*) Thus, if the court's instructions on civil penalties prejudicially misstate the law, plaintiff rightfully complains about them in this appeal.

### 4. *Construction of Subdivision (e) of Section 1794*

#### a. *Standard of Review*

Interpreting a statute is a question of law and therefore we interpret section 1794 independently of the trial court's analysis. (*Burden* v. *Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].)

#### b. *Analysis of the Statute*

In section 1794, subdivisions (a) and (b) provide for damages, subdivision (c) provides for civil penalties, and subdivision (d) provides for

attorney fees and costs. However, subdivision (e) provides for *all four*. If the Legislature did not intend for subdivision (e) to be different in some way from the collective provisions in subdivisions (a), (b), (c), and (d), there would have been no need for subdivision (e) to be added in 1987 as an amendment to the section. A reading of subdivision (e) makes it clear that the Legislature did not intend for its amendment to alter the damage provisions in subdivisions (a) and (b), or the attorney fees and costs provision in subdivision (d). Rather, only the civil penalty provisions were readdressed in subdivision (e); and then only as they relate to section 1794 suits involving a consumer's right to replacement of or reimbursement for a nonconforming new motor vehicle.

Subdivision (e) begins with the words: "Except as otherwise provided in this subdivision, if the buyer establishes a violation of [the replacement/ reimbursement new motor vehicle provisions] the buyer shall recover damages and reasonable attorney's fees and costs, and may recover a civil penalty of up to two times the amount of damages." (§ 1794, subd. (e)(1).) The "otherwise" provisions in subdivision (e) relate only to civil penalties and they set out the specific instances in which a civil penalty may and may not be awarded under that subdivision. Penalties may be awarded if the consumer establishes a violation of his or her replacement/reimbursement remedies (§ 1794, subd. (e)(1)); but may not be awarded *if* (1) the defendant maintains a qualified dispute resolution process, (2) the consumer fails to serve notice on the defendant manufacturer requesting it to comply with the replacement/reimbursement provisions of the Act, or (3) the consumer serves the notice and it is complied with within 30 days of service (§ 1794, subd. (e)(2), (3), & (4)). No mention is made of a requirement of willfulness.

If the Legislature meant for the willfulness provision in subdivision (c) to be a necessary element of civil penalties in all section 1794 suits based on violation of the replacement/reimbursement law for new motor vehicles, it could easily have so expressly provided in subdivision (e); or it could have simply listed, in subdivision (c), the above stated three instances when a civil penalty may not be awarded; i.e., the Legislature could have put, in subdivision (c), the provisions set out in subdivision (e)(2), (3) and (4). Subdivision (c) already lists certain situations in which it will not apply. The Legislature could have continued that list with the situations enumerated in paragraphs (2), (3) and (4) of subdivision (e). Instead, the Legislature chose to add a whole new subdivision. This separate and specific treatment of remedies available to dissatisfied new car customers must be deemed significant and should be given effect by us *as it is written*. "It is a well recognized principle of statutory construction that when the Legislature has carefully employed a term in one place and has excluded it in another, it should not be

implied where excluded. [Citations.]" (*Ford Motor Co.* v. *County of Tulare* (1983) 145 Cal.App.3d 688, 691 [193 Cal.Rptr. 511].) This language from *Ford Motor Co.* was quoted with approval in *Brown* v. *Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 725 [257 Cal.Rptr. 708, 771 P.2d 406], where the court was called upon to contrast and construe various subdivisions in another section of the Civil Code.

Thus, when the trial court concluded that subdivision (c)'s requirement of willfulness applies also to subdivision (e), and when it, in effect, instructed the jury that subdivision (c)-type willfulness is the sole basis for awarding civil penalties, the court ignored a special distinction made by the Legislature with respect to the seller of new automobiles. In so doing, the court erred. The error was prejudicial because it prevented the jurors from considering the specific penalty provisions in subdivision (e) and awarding such penalties, in their discretion, if they determined the evidence warranted such an award.

c. *The "Due Process" Issue*

Citing *Hale* v. *Morgan* (1978) 22 Cal.3d 388 [149 Cal.Rptr. 375, 584 P.2d 512] and *Balmoral Hotel Tenants Assn.* v. *Lee* (1990) 226 Cal.App.3d 686 [276 Cal.Rptr. 640], defendant argues that reading subdivision (e) without a willfulness provision violates due process. However, subdivision (e) does not suffer from the problems associated with the legislation challenged in *Hale* and *Balmoral*. That legislation provided for *mandatory* civil penalties which had the potential of being very large. The combination of those two factors was troubling to the *Hale* court because a mandatory penalty does not take into account the culpability of the person paying it. The court said: "No discretion is permitted the trier of fact in fixing the penalty. The acts prohibited by the [legislation] potentially encompass a broad range of culpable activity and conduct on the part of the landlord, and a widely divergent injury resulting in damage to the tenant. The fixed penalties are imposed upon potential defendants who may very greatly in sophistication and financial strength. [Citation.]" (*Hale, supra,* at p. 399.) While the penalties provided for in subdivision (e) are potentially large, they are not mandatory.

In *Hale,* the contested legislation related to a landlord's wrongful deprivation of utility services for the purpose of evicting a tenant. The statute required a penalty of $100 per day; no discretion was permitted the trier of fact in fixing the penalty, no matter what the culpability and conduct of the defendant. (*Hale* v. *Morgan, supra,* 22 Cal.3d at pp. 392, 397-399.) In *Balmoral Hotel Tenants Assn.* v. *Lee, supra,* 226 Cal.App.3d 686, the legislation provided for a mandatory trebling of damages in a wrongful eviction

or attempted eviction. The *Balmoral* court determined that the ordinance's requirement of trebling of "actual damages" required that "actual damages" not include damages for mental anguish, in part because trebling of such damages could produce constitutionally excessive penalties.

In the instant case, the trier of fact has discretion in whether to increase the basic damage award in a section 1794 action. For that reason, cases like *Hale* v. *Morgan, supra*, 22 Cal.3d 388, and *Balmoral Tenants Assn.* v. *Lee, supra*, 226 Cal.App.3d 686 do not control this appeal.[6] Besides, defendant places too much emphasis on the term "willful." ■ "In civil cases, the word 'willful,' as ordinarily used in courts of law, does not necessarily imply anything blamable, or any malice or wrong toward the other party, or perverseness or moral delinquency, but merely that the thing done or omitted to be done was done or omitted intentionally. It amounts to nothing more than this: That the person knows what he is doing, intends to do what he is doing, and is a free agent. [Citations.]" (*May* v. *New York M. Picture Corp.* (1920) 45 Cal.App. 396, 404 [187 P. 785].) This language from *May* was quoted with approval in *Ibrahim* v. *Ford Motor Co.* (1989) 214 Cal.App.3d 878, 894 [263 Cal.Rptr. 64], where the court considered the civil penalty provision in subdivision (c) of section 1794.[7]

■ Three final observations. First, manufacturers of cars are unlike landlords, who, as the *Hale* court observed, have the potential of ranging in economic status and business sophistication from the large corporate land-lord to "the elderly widow of modest means who, dependent on the income from a single unit, . . . and no longer willing or able to bear the expense of utilities for an occupant who refuses to pay rent, finally terminates the tenant's utility services in order to speed his departure." (*Hale* v. *Morgan, supra*, 22 Cal.3d at pp. 399-400.)

Second, if we were to blend the provisions in subdivision (c) with those in subdivision (e), a defendant new motor vehicle manufacturer who happens to maintain a qualified third party dispute resolution process could willfully, but without risk of any civil penalties, refuse to replace a nonconforming vehicle or reimburse the plaintiff for it despite an obvious duty to do one

---

[6]Another case relied upon by defendant, *Fick* v. *Nilson* (1950) 98 Cal.App.2d 683 [220 P.2d 752], also involved statutes which imposed mandatory treble damages.

[7]The jury instruction given in the case before us tracks language from the *Ibrahim* case, where the court addressed the validity of the instruction on willfulness given to the jury. The court said: "The instructions should have told the jury that a civil penalty could be awarded to plaintiff if the jury determined that Ford knew of its obligations but intentionally declined to fulfill them." (*Ibrahim* v. *Ford Motor Co., supra*, 214 Cal.App.3d at p. 894.) We think the more expansive language quoted above from *May* v. *New York M. Picture Corp., supra*, 45 Cal.App. 396, would also be helpful to a jury.

or the other. This does not seem like a good way to enforce consumer protection.

Third, by construing subdivision (e) as we do here, we encourage manufacturers to maintain qualified third party dispute resolution processes, thereby ensuring that fewer consumers will have to take their problems to court. In this regard, subdivision (e) acts in a manner similar to the provision of the judicial arbitration legislation which encourages litigants to accept the decision of judicial arbitrators by providing that persons requesting a trial de novo will be penalized with payment of certain costs if they do not obtain a verdict which is better for them than the decision of the arbitrator. (Code Civ. Proc., § 1141.21.)

## 5. *Attorney Fees*

Plaintiff has requested attorney fees in connection with his efforts in this appeal. ■ Section 1794 authorizes attorney fees to the consumer who prevails in a section 1794 action. Attorney fees recoverable pursuant to statute or contract are properly awarded to the litigant for both his trial and appellate efforts. (*Morcos* v. *Board of Retirement* (1990) 51 Cal.3d 924, 927 [275 Cal.Rptr. 187, 800 P.2d 543].) Upon remand, the trial court can set an amount for plaintiff's attorney fees on appeal.

### DISPOSITION

The judgment appealed from is reversed in part and affirmed in part. Insofar as the judgment awarded plaintiff zero dollars in civil penalties according to the jury's special verdict, the judgment is reversed. In all other respects the judgment is affirmed. The cause is remanded for further trial on the issue of civil penalties. Costs on appeal to plaintiff.

Klein, P. J., and Kitching, J., concurred.

Respondent's petition for review by the Supreme Court was denied June 2, 1994.