Filed 12/5/25

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| MICHAEL J. MANERI, | |
| Plaintiff and Appellant, | G062826, G063046, G063901 |
| v. | (Super. Ct. No. 30-2019-01055881) |
| FCA US LLC, | O P I N I O N |
| Defendant and Appellant. | |

Appeals from a judgment and postjudgment orders of the Superior Court of Orange County, Nick A. Dourbetas, Judge. Affirmed in part, reversed in part, and remanded with directions. Motion to dismiss Plaintiff's appeal and request for judicial notice denied.

Law Offices of Jim O. Whitworth and Jim O. Whitworth for Plaintiff and Appellant.

Horvitz & Levy, Lisa Perrochet, Shane H. McKenzie; Clark Hill, Michael B. Sachs, and Vanessa Dao for Defendant and Appellant.

---

* Certified for publication except Part V of the Discussion. (Cal. Rules of Court, rules 8.1105 & 8.1110.)

Plaintiff Michael J. Maneri and defendant FCA US LLC each challenge different rulings in this "lemon law" dispute over Maneri's FCA-made Ram truck.

We partially publish this decision to clarify the scope of Commercial Code remedies for breach of implied warranty.[1] We conclude the trial court properly withheld damages for the costs of replacement vehicles after Maneri revoked acceptance of the Ram, as those expenses did not qualify as cover or incidental damages. But the court erred by awarding damages unrelated to FCA's breach and failing to order Maneri to return the vehicle after awarding him the purchase price. As a result, the court also incorrectly awarded attorney fees incurred after FCA's more favorable offer under Code of Civil Procedure section 998.

In the unpublished portion, we reject Maneri's challenges to the summary adjudication of his express warranty claim.[2] We therefore affirm in part, reverse in part, and remand for further proceedings.

FACTS

I.

THE RAM

Maneri purchased the Ram in May 2018 for $66,240. He soon began experiencing issues with the vehicle. In June, he brought it to the dealership for the first time, reporting intermittent problems with the

---

[1] Oral argument largely focused on a need to clarify recurring issues in lemon law jurisprudence. We hope that partial publication will foster more efficient resolution of these cases.

[2] Given our conclusion, the unpublished discussion of the express warranty claim does not affect the damages or attorney fees questions, and we therefore reserve it for last.

infotainment system, sideview-mirror rotation, and the one-touch window roll-up function. The dealership was unable to replicate these problems. Maneri returned three more times over the couple of months, reporting other issues, which were ultimately resolved.

Maneri brought the Ram back in September 2018, reporting intermittent delays in the running board's retractions. Again, the dealership could not replicate the issue. That same month, Maneri called FCA for the first time but the call concerned only a problem setting up an account for the vehicle's "Uconnect" platform, which was later resolved. He called twice more in November about unresolved issues. During the second call, Maneri "referenc[ed]" the lemon law. At his subsequent deposition, he could not recall what he said during this call but FCA told him it was going to have its engineers examine the Ram.

Maneri returned to the dealership in December 2018 for FCA's inspection, raising the ongoing issues with the running board, mirror, window, and infotainment system, among others. The Ram remained there until February 2019 because "service had to be coordinated back and forth" with FCA's engineers. During that period, Maneri was provided a rental car or loaner. FCA was unable to replicate most of his complaints.

The same day Maneri retrieved the Ram, FCA offered to repurchase or replace the vehicle. The offer required Maneri to return the vehicle undamaged (aside from normal wear and tear) and to sign a general release. Under the repurchase option, FCA would repay the full purchase price, with deductions for mileage "at first repair" and any excess damage. The offer included no reimbursement for aftermarket parts and made no mention of incidental damages.

Maneri did not respond to FCA's offer. He believed it was unfair because of the mileage deduction and lack of reimbursement for aftermarket parts.

## II.

### SUMMARY ADJUDICATION ON THE EXPRESS WARRANTY CLAIM

Shortly after receiving FCA's repurchase offer, Maneri filed this action, asserting two claims: breach of express warranty and breach of the implied warranty of merchantability. (Civ. Code, §§ 1791.1, subd. (a)(2), 1791.2, subd. (a)(1).)[3] On the express warranty claim, he alleged that FCA failed to replace or repurchase the Ram as required by law.

A few months later, in July 2019, FCA made a statutory settlement offer under Code of Civil Procedure section 998. The offer proposed $70,000 plus attorney fees—Maneri would choose between $5,000 and having the trial court determine the amount of fees—and required him to return the Ram. Maneri did not accept the offer.

In the meantime, Maneri registered the Ram as nonoperational and switched to physical-damage-only insurance. To replace the Ram, he rented other vehicles for about a year before purchasing a Ford truck. After carrying only physical damage coverage for nearly two years, he reinstated liability, medical, and uninsured motorist coverage for the Ram in November 2021.

FCA moved for summary adjudication on the express warranty claim, contending it had satisfied its statutory obligations by offering to repurchase the Ram. It included excerpts from Maneri's deposition describing

---

[3] Undesignated statutory references are to this code.

4

his contacts with FCA and the essential terms of its FCA repurchase offer. It did not include the offer letter itself.

In opposition, Maneri claimed FCA's repurchase offer was irrelevant because FCA had not actually repurchased the vehicle. He attached the full transcript of his deposition, which recounted his difficulties with the Ram and repair attempts. In responding to FCA's separate statement, he raised evidentiary objections to various declarations.

The trial court granted FCA's motion for summary adjudication, concluding that FCA's repurchase offer satisfied its obligations under section 1793.2. The court declined to rule on Maneri's evidentiary objections, deeming them improperly raised in his response to the separate statement.

III.

THE DAMAGES TRIAL AND ATTORNEY FEES

After the trial court dismissed Maneri's express warranty claim, FCA conceded that the Ram was not of the quality guaranteed by the implied warranty of merchantability. The parties stipulated that the court would determine appropriate damages at a bench trial.

Maneri claimed he had revoked acceptance of the Ram and sought over $155,000 in damages. In addition to the vehicle's purchase price and other items, his demand included about $10,000 for rental vehicles, about $27,000 for the Ford truck, about $6,250 in insurance premiums, and loan interest. He "stipulate[d]" that "FCA can have both trucks upon payment of damages."

Maneri provided combined premium statements covering multiple vehicles, including the Ram. Premiums attributable to the Ram totaled about $3,300, including about $1,000 for liability, medical, and uninsured motorist coverage. A credit union document showed that the loan

5

interest he claimed related to the Ford truck. FCA, by contrast, asserted that Maneri was entitled only to the diminution in the Ram's value, which it calculated at about $23,000.

The trial court awarded Maneri about $74,600, consisting of the purchase price ($66,240), loan interest (about $2,100), and insurance costs (about $6,250). The court deemed the loan interest proper incidental damages because it "constitute[d] funds paid . . . for the care and custody of the goods rightfully rejected[—]the [Ram]." It reached the same conclusion on the insurance costs, including "liability and casualty insurance."

However, the trial court denied damages for Maneri's rental car expenses or the cost of the Ford truck, finding these expenses unreasonable because Maneri had not shown the Ram was "completely unusable."

The court's minute order did not direct Maneri to return the Ram. The court later entered judgment consistent with its minute order, making no reference to the return of the Ram.

FCA filed motions for judgment notwithstanding the verdict and for a new trial, contending the trial court should have awarded neither (1) loan interest and insurance premiums that did not relate to the Ram nor (2) driving-related premiums. FCA also sought to amend the judgment to "mak[e] clear" that Maneri must return the vehicle. These motions were denied by operation of law.

After judgment, Maneri moved for attorney fees, seeking over $470,000. FCA asserted that Maneri was not entitled to fees incurred after its July 2019 settlement offer. It contended that, excluding damages not yet occurred at the time of its offer, Maneri had failed to obtain a more favorable judgment and was thus not entitled to postoffer fees under Code of Civil Procedure section 998.

6

The trial court awarded Maneri about $308,000 in fees, with only about $7,400 for preoffer work. It concluded that Maneri had obtained a more favorable judgment, observing that the judgment "allowed [Maneri] to retain the [Ram]."

## DISCUSSION

### I.

### Statutory Background

The Song-Beverly Consumer Warranty Act allows consumers to enforce implied and express warranties. For breach of an implied warranty, the statute generally provides for the remedies available under the Commercial Code. (Civ. Code, § 1794, subd. (b).) These remedies aim to place the aggrieved party "in as good a position as if the other party had fully performed." (Cal. U. Com. Code, § 1305, subd. (a).) When a buyer justifiably revokes acceptance of goods, the primary remedy is recovery of the purchase price, with possible incidental damages and damages for substitute-goods—known as "cover."[4] (Civ. Code, § 1794, subd. (b)(1); Cal. U. Com. Code, §§ 2711, subd. (1), 2712, 2713, subd. (1), 2715, subd. (1).)

For breach of an express warranty on a new motor vehicle, the statute provides an additional, replace-or-repurchase remedy: if the manufacturer cannot repair the vehicle after a reasonable number of attempts, it must promptly replace the vehicle or reimburse the purchase price and pay incidental damages. (§§ 1793.2, subd. (d)(2) & (d)(2)(A)–(B), 1794, subd. (b) [referencing § 1793.2, subd. (d)].) The buyer may elect

---

[4] We do not decide whether the reimbursement amount under the Commercial Code may be adjusted for the buyer's use of the goods. (See *Carver v. Volkswagen Group of America, Inc.* (2024) 107 Cal.App.5th 864, 890, fn. 6 ["It is unclear whether plaintiff would be entitled to the full value paid if he sought rescission"].)

restitution instead of replacement. (§ 1793.2, subd. (d)(2).) The repurchase amount excludes aftermarket items and may be reduced for the buyer's use. (§ 1793.2, subd. (d)(2)(B)–(C).) We address these statutory obligations later, in connection with Maneri's express warranty claim.

## II.

### THE TRIAL COURT CORRECTLY DECLINED TO AWARD
### ADDITIONAL DAMAGES ON THE IMPLIED WARRANTY CLAIM

Maneri was not entitled to the additional damages he claims on appeal: the costs of vehicle rentals and his replacement vehicle (the Ford truck).[5] These costs do not qualify as either cover or incidental damages under the Commercial Code.

The proper measure of damages is an issue of law reviewed de novo. (*Bermudez v. Ciolek* (2015) 237 Cal.App.4th 1311, 1324.) By contrast, the amount of damages is a question of fact reviewed for substantial evidence. (*Ibid.*)

A buyer who justifiably revokes acceptance of goods may make a reasonable purchase of substitute goods—cover—and recover the difference between the cost of cover and the contract price, less any expenses saved by the seller's breach.[6] (Cal. U. Com. Code, §§ 2711, subd. (1), (1)(a), 2712, subds. (1), (2).) The buyer may also recover reasonable incidental damages, including "any other reasonable expense" incident to the seller's breach. (*Id.*,

---

[5] Maneri also refers to "the cost of cover," but he does not explain what this means beyond the costs already mentioned. We therefore disregard these references.

[6] Although the trial court stated that Maneri had "rejected" the Ram, we presume it meant he had revoked his acceptance, as he had already accepted it.

§ 2715, subd. (1).) Incidental damages are meant to reimburse the buyer for reasonable costs incurred in connection with the handling of nonconforming goods. (*Kirzhner v. Mercedes-Benz USA, LLC* (2020) 9 Cal.5th 966, 978 (*Kirzhner*).) They may include postrevocation costs of caring for the goods "pending their return to the seller" but not the standard costs of ownership. (*Id.* at pp. 979–980.)

The costs Maneri paid for long-term rentals and the Ford truck do not qualify as cover damages. Initially, at least one court has held that "[t]he concept of 'covering' is relevant only in the context of *commercial* transactions in which the buyer has an opportunity to purchase or obtain substitute goods to mitigate damages . . . ." (*Bishop v. Hyundai Motor America* (1996) 44 Cal.App.4th 750, 756.) But even if those vehicles could be considered cover, Maneri paid less for them (about $40,000, including interest) than he had paid for the Ram (about $66,000). Cover damages compensate only for *additional* costs incurred to secure substitute goods. (Cal. U. Com. Code, § 2712, subd. (2); 2 Hawkland et al., Uniform Commercial Code Series (2024) § 2-712:1 [if buyer covers for price less than contract price, buyer is better off and has no recoverable damages].)

Nor do these costs qualify as incidental damages. They were not related to the care or custody of the Ram. (*Kirzhner, supra*, 9 Cal.5th at pp. 978, 979.) And Maneri already received the Ram's purchase price under the trial court's damages award. Awarding him the cost of additional vehicles—after he revoked acceptance and declined FCA's repurchase offer— would provide a windfall. But Commercial Code remedies are meant only to

9

restore him to the position he would have been in but for FCA's breach.[7] (Cal. U. Com. Code, § 1305, subd. (a).)

Maneri's discussion of section 1793.2 and related caselaw misses the mark. That section applies only to breaches of express warranties. (§ 1793.2.) The claim here arises from a breach of an implied warranty, subject to Commercial Code remedies. (§ 1794, subd. (b).) The trial court did not err by declining to award additional damages.

### III.

### THE TRIAL COURT AWARDED IMPROPER DAMAGES

### AND ERRED BY FAILING TO ORDER THE RETURN OF THE RAM

We agree with FCA that the trial court erred by awarding Maneri damages for (1) loan interest and (2) certain insurance premiums. The evidence does not support the court's findings that these amounts related entirely to the Ram. And the court erred by concluding that liability insurance for the Ram qualified as incidental damages.[8]

---

[7] We need not consider the trial court's reasoning that the Ram was usable. Maneri was not entitled to the claimed costs regardless of the Ram's condition. We review the trial court's ruling, not its stated reasons. (*Mireskandari v. Gallagher* (2020) 59 Cal.App.5th 346, 358.)

[8] Although FCA asserted these contentions for the first time in its posttrial motions, challenges to the sufficiency of the evidence need not be raised in the trial court at all. (*Beverly Hills Unified School Dist. v. Los Angeles County Metropolitan Transportation Authority* (2015) 241 Cal.App.4th 627, 674.) And the trial court expressly included "liability and casualty insurance" in damages award, preserving the issue for appeal. (See *People v. Thomas* (2021) 63 Cal.App.5th 612, 627 [no forfeiture where trial court ruled on appellant's theory].) By contrast, FCA has forfeited its additional contention that Maneri was not entitled to premiums paid before he revoked acceptance of the Ram. It did not raise this contention before the trial court, even in its posttrial motions. (*People v. Redd* (2010) 48 Cal.4th 691, 718 [contention not raised in trial court was forfeited].)

10

The court wrongly attributed the roughly $2,100 in loan interest to the Ram. The record shows, and Maneri does not dispute, that this amount related to the Ford truck. Likewise, the court awarded about $6,250 in insurance premiums, again attributing the full amount to the Ram. Yet Maneri's premium statements show that this amount covered multiple vehicles. In fact, premiums for the Ram totaled only about $3,300. Of that amount, roughly $1,000 was for liability, medical, and uninsured motorists coverage—costs associated with driving the vehicle.

Awarding these amounts was error. As discussed, Maneri was entitled to recover expenses related to the postrevocation care and custody of the Ram and other reasonable expenses incident to FCA's breach. (Cal. U. Com. Code, § 2715, subd. (1); *Kirzhner, supra*, 9 Cal.5th at pp. 978–979.) He was not entitled to loan and insurance costs related to other vehicles. Nor was he entitled to expenses associated with *driving* the Ram, such as liability insurance. (*Kirzhner*, at p. 980.) The record refutes Maneri's claim that his lender required driving-related coverage: for about two years, he carried only physical damage coverage—sufficient to protect the lender's interest in the vehicle.

These erroneous components of the trial court's judgment total about $6,000. On remand, the court should determine the precise amount by which the judgment must be reduced.

We also agree with FCA that the trial court erred by failing to order Maneri to return the Ram.[9] A buyer who justifiably revokes acceptance

---

[9] Contrary to FCA's claim, the trial court's omission of this directive from its judgment does not appear to be a clerical error. In ruling on Maneri's motion for attorney fees, the court relied on the fact that "the judgment allowed [Maneri] to retain the vehicle."

must return the goods to the seller. (*Kirzhner, supra*, 9 Cal.5th at p. 978 [discussing buyer's postrevocation costs in care and custody of goods "pending their return to the seller"]; 2 Hawkland et al., *supra*, § 2-608:3 ["Once the buyer effectively and justifiably revokes acceptance of the goods, the seller is entitled to the goods back"].) And of course, Maneri "stipulate[d]" below—before changing position on appeal—that he would return the Ram to FCA upon payment of damages.

Maneri's reliance on *Niedermeier v. FCA US LLC* (2024) 15 Cal.5th 792 is misplaced. That case addressed statutory remedies for breach of express warranties under section 1793.2, not Commercial Code remedies for breach of implied warranties. (*Niedermeier v. FCA US LLC*, at p. 801.) Our Supreme Court held that when a manufacturer fails to promptly pay restitution when required, forcing the consumer to trade in or sell the vehicle, trade-in credit or sale proceeds do not reduce the statutory restitution remedy. (*Ibid.*) This holding has no bearing on this case. Because Maneri revoked acceptance under the Commercial Code, he is required to return the Ram.

IV.

FCA'S MORE FAVORABLE STATUTORY SETTLEMENT OFFER

REQUIRES REVERSAL OF THE ATTORNEY FEES AWARD

FCA is correct that its statutory settlement offer was more favorable than the damages Maneri's ultimately recovered. As a result, Maneri is not entitled to recover postoffer attorney fees, and the trial court's fee award must be reduced accordingly.

Under section 1794, subdivision (d), a prevailing buyer in a Song-Beverly Consumer Warranty Act action is entitled to attorney fees. But Code of Civil Procedure section 998 may limit that entitlement. If a plaintiff rejects

12

a reasonable settlement offer and then fails to obtain a more favorable judgment, the plaintiff cannot recover postoffer costs, including attorney fees. (Code Civ. Proc., § 998, subd. (c)(1); *Ayers v. FCA US, LLC* (2024) 99 Cal.App.5th 1280, 1294, 1296.) Although attorney fee awards are generally reviewed for abuse of discretion, de novo review applies if entitlement turns on legal criteria. (*Duale v. Mercedes-Benz USA, LLC* (2007) 148 Cal.App.4th 718, 724.)

Here, the cash component of FCA's offer exceeded the damages Maneri will ultimately recover. FCA offered Maneri $70,000. Maneri's recovery amounts to about $68,540 ($66,240 for the Ram's purchase price and about $2,300 for insurance), once the erroneous damages components and postoffer fees are excluded.[10] Maneri could recover preoffer attorney fees as determined by the court in either case, making that component "effectively a wash." (*Duale v. Mercedes-Benz USA, LLC, supra*, 148 Cal.App.4th at pp. 722, 725, fn. 3 [discussing settlement offer including fees per parties' agreement or court's determination].) And contrary to the trial court's reasoning, Maneri will not retain the RAM. Because Maneri did not obtain a more favorable result than FCA's offer, the trial court erred by awarding him postoffer attorney fees—the bulk of the total fees awarded.

V.

MANERI'S CHALLENGES TO SUMMARY ADJUDICATION ON THE EXPRESS WARRANTY CLAIM ARE FORFEITED AND MERITLESS

In the statement of facts and the nine-page "introduction" of Maneri's opening brief, he asserts the summary adjudication ruling was error for various reasons. (Capitalization omitted.) In the argument section of his

---

[10] Under the statute, postoffer costs are excluded in determining if the judgment was more favorable. (Code Civ. Proc., § 998, subd. (c)(2)(A).)

13

brief, he references those contentions either in conclusory fashion or not at all. He has therefore forfeited his contentions. (Cal. Rules of Court, rule 8.204(a)(1)(B) [party's brief must "[s]tate each point under a separate heading or subheading, . . . and support each point by argument and, if possible, by citation of authority"].)[11]

Although Maneri's contentions are forfeited, we address them briefly and conclude they lack merit. "A party is entitled to summary adjudication of a cause of action if 'no genuine issue of material fact exists' and the party is 'entitled to judgment as a matter of law.'" (*Bradsbery v. Vicar Operating, Inc.* (2025) 110 Cal.App.5th 899, 906.) We review the court's ruling de novo. (*Id.* at pp. 906–907.)

Maneri's contention that the manufacturer must *actually* repurchase the vehicle, rather than make a compliant repurchase offer, is unpersuasive. The statutory repurchase remedy assumes the buyer's agreement and cooperation. We see no indication that the Legislature expected manufacturers to foist money on buyers and compel them to relinquish their vehicles. Indeed, the statute's reimbursement formula includes the buyer's incidental damages—amounts that may be known only to the buyer. (§ 1793.2, subd. (d)(2)(B).)

Also unpersuasive is Maneri's claim that FCA's offer was noncompliant. A general release is permissible. (See § 1793.26 [prohibiting certain confidentiality clauses in any required release].) And even assuming a requirement that the vehicle be returned undamaged would be improper, this term did not invalidate the offer, as Maneri rejected the offer based on its

---

[11] We deny FCA's motion to dismiss Maneri's appeal. Although Maneri's briefing is severely deficient and we deem many of his scattered contentions forfeited, FCA has been able to respond to the opening brief.

financial terms. (See *Herrera v. Ford Motor Company* (C.D.Cal., Feb. 24, 2022, No. CV 21-4731) 2022 WL 562267 ["'acceptable' condition" requirement did not invalidate offer, even if improper, because plaintiff rejected offer based on financial terms].) Similarly, although the offer made no provision for incidental damages, there is no evidence that Maneri had any incidental damages at that time.

Maneri's claims regarding FCA's *replacement* offer are irrelevant. The statute does not require the manufacturer to offer a replacement at all if it makes a compliant repurchase offer, which FCA did. (§ 1793.2, subd. (d)(2) [allowing buyer to elect restitution in lieu of replacement but not vice versa].)[12] Although Maneri complains that FCA did not include its repurchase offer letter in its filings, his own deposition testimony related the essential terms of the offer.

Contrary to Maneri's assertion, FCA made its offer promptly after a reasonable number of attempts to repair the vehicle. Maneri presented the vehicle for repair of the unresolved electronic issues—the running board, the radio presets, the touchscreen, and the one-touch window roll up—no more than twice per issue (on three occasions).[13] FCA offered to repurchase the vehicle in February 2019, soon after its final attempts proved unsuccessful. Maneri says FCA made its offer six months "after being asked," but there is no evidence that he ever asked FCA to repurchase the vehicle before FCA's offer. In a November 2018 call with FCA, Maneri "referenc[ed]"

---

[12] Because the statutory language is clear, we deny FCA's request for judicial notice of legislative history materials as unhelpful. (*Carachure v. Scott* (2021) 70 Cal.App.5th 16, 29, fn. 5.)

[13] Maneri brought the vehicle to the dealership additional times for other issues that were ultimately resolved.

the lemon law, but at his deposition, he could not recall what he said during the call.

Finally, we disregard Maneri's challenges to the admissibility of some declarations. The trial court declined to rule on his objections because they were procedurally improper and Maneri neither argues this was error nor shows any prejudice. Accordingly, the trial court correctly granted summary adjudication on the express warranty claim.

## DISPOSITION

The judgment is reversed as to the implied warranty damages but otherwise affirmed. The postjudgment attorney fees order is reversed. The matter is remanded for the court to (1) reduce the damages award consistent with this opinion, (2) order the return of the Ram to FCA, and (3) exclude postoffer fees from its attorney fees award. FCA is awarded costs on appeal.

SCOTT, J.

WE CONCUR:

MOTOIKE, ACTING P. J.

DELANEY, J.

16